My name is John Kootsman. I'm with the law firm of Paoli Latino and Kootsman in Missoula, Montana. I am counsel for John Schmidt, who is the appellant in this case. The issue in the case on appeal is whether Mr. Schmidt will be allowed or should be allowed to bring a case against Burlington Northern Santa Fe Railway Company under the Federal Employers Liability Act, the FELA. Briefly, your honors, the FELA differs from state workers' compensation acts in that it requires proof of negligence, but if the employee can carry that burden, then he is entitled to recover all of the damages he can prove, including his lost wages, including his lost future earning capacity, and including pain and suffering. So if Mr. Schmidt is able to prevail on this, the advantages to him are significant, and the cost to the railroad is also significant. All right. That being said, you know, on the first count that you're trying to allege that WFE wasn't nominally Mr. Schmidt's employer, right? Correct, your honor. Which, in my view, and I'm only speaking from my perspective, I think is a fairly weak argument. If we feel that WFE was at least nominally involved, then we go into the Kelly test, right? I think that's right, your honor. While I'm not foreclosing your other argument, I do think it's your weaker one if, since there's a lot, there seems to be sort of significant evidence that WFE does have, that was at least nominally involved. What facts in the record, if we just jump over that for a moment and we get to the Kelly test, what facts in the record would lead us to conclude that BNSF was exercising sufficient control over Mr. Schmidt's activities at the time he alleges he was injured, that BNSF should be deemed his employer? Sure, your honor. In an FELA case like this one, when you're looking for what are the relevant facts, what are the facts and how might a jury weight these if a jury had a chance to look at these, I think you have to pay careful attention to what the purpose of the FELA is and what it does. This is a statute that Congress enacted to require railroads to provide a safe workplace for their employees. It's a statute that Congress enacted in response to what it viewed as carnage in the railroad industry at the end of the 19th century and the beginning of the 20th century. Well, counsel, don't we have to look at this through the lens of the standard of review? This is a summary judgment. I believe that's right, your honor. So is it your position that there are no material issues of fact in this case? No, your honor. It's our position that there are material issues of fact. I thought you wanted a determination to be made that WFE was the nominal employee. No, your honor. We're saying that's a question of fact. We should have been allowed to go to the jury. I misunderstood your first argument because I thought you said that you had established that WFE was a nominal employee. I wouldn't go that far, your honor. I think that there are questions of fact all over the record, and I think that could go either way. And that's why we don't get to Kelly because I think we have raised a question of fact, multiple questions of fact, about whether BNSF should be taken at its word when it repeatedly told Mr. Schmidt and others that he was a BNSF employee. Do you have a problem with the Woolery case? I do think that Woolery was wrongly decided. It suggests that this summary judgment was correctly granted. Woolery does, right? Up, your honor, up to the point where all of the facts match up. We have at least two additional facts we've developed in our record that the court in the Eastern District of Washington and Spokane did not have. What distinguishes Mr. Schmidt from Mr. Woolery's situation? Two things, your honor. Number one, we have significant evidence in this case that the BNSF medical department was involved in deciding who was going to work in that shop. They, when they recalled him to work, they sent him out for a medical evaluation. They had him complete their in-house medical questionnaire to see what his current condition was. That's on BNSF letterhead. They then scheduled the medical evaluation. They wrote to the doctor who was conducting that evaluation. They told him exactly what to look for. And then, based on that evaluation, they determined that they would not allow him to come back to work. Now. But don't you have to have some day-to-day supervision over the activity where, you know, where he claims he was injured? What, the injury and activity? And where is that in the record? Your honor, if we're in the Kelly case, I cannot place a BNSF supervisor in that shop issuing orders. But why do you say Kelly shouldn't be considered? I don't think we get there, your honor, because Kelly says repeatedly that it is a test that applies when it is conceded that the plaintiff was nominally employed by somebody other than the railroad. And I don't think that we can get there on this record. I think there are questions of fact that preclude. That's why you say there's a question of fact, whether or not there's a nominal employment, because if otherwise you're in the Kelly area. So you say if you get into the Kelly area, you have problems that you have to win on the first prong? No, I don't think it's quite that simple, your honor. Clearly, I would rather win on the first prong. But if we get into the Kelly case, I think that if you take a look at what was actually going on here, no, we don't have a supervisor employed by BNSF pulling all of the strings in the shop. But we have a lot of other control by the railroad. And the point that I think is significant about this is if you look at what BNSF was actually doing in there, and you compare it to how the FVLA works and what its purpose is, I think you're going to find that the things that BNSF did have control over in that shop go right to the core purposes of the FVLA. So just so I understand your argument, I mean, your argument is we don't get to Kelly, to the Kelly analysis because there's a question of fact on whether or not WSF was a nominal employee. That's right. So you go back, in your view, it should go back to the district court for the issue to be determined as to whether or not a nominal employee-employer relationship existed between your client and WSF. I think so, your honor. But it's undisputed in the record that there are accident reports that are signed by your client and dated 4-2-92-6-22-92-2-10-93-8-4-94. I can go on with more, all of which indicate WFE is Schmidt's employer. Every one of those documents, your honor, but the last one- And WFE also paid Mr. Schmidt's workman compensation benefits in 1999. Your client admits that WFE was on some of the paychecks, but only a few paychecks were produced by Schmidt, and they were, that was a wholly-owned subsidiary of BNSF, and WFE's business was maintaining and repairing refrigerated cars and trailers for the use of BNSF. And the record seems to indicate that Schmidt was employed by WFE in 1999. Before its merger with BNSF, and that it continued to work for the company following the merger. So I'm having trouble if that, just with those facts, how do you say that there's not the nominal, that test is not met? Because this case is before you, your honor, on appeal from a summary judgment. And it is- So what's the evidence that raises the material issue of fact regarding whether WFE, get those clients? What evidence is there in the record that raises a material issue of fact? That entire series of documents from ER45 to ER79, in which they repeatedly referred Mr. Schmidt as a BNSF employee. The earlier documents, of course, before BNSF came to exist, referred to him as a Burlington Northern employee. They said that over and over and over again. They also repeatedly, you know, when we get down to the end, when they're calling him back from his last furlough, they are, they're writing out to the doctors, they write to Mr. Schmidt and they say, we understand that you intend to exercise your seniority to return to work within the Burlington Northern Santa Fe Mechanical Department. And they tell the doctor who's doing the examination that they want him to evaluate whether or not Mr. Schmidt is fit to return to work as, and this is a direct quote, as a BNSF Carmen. Okay, but it, I guess the issue isn't, all right, let's assume that no one's really contesting any of the documents. They're just all in there. All right. So as a legal matter, it, wouldn't it be a legal matter to determine whether it, I would, there may be a material issue as to whether there's dual employees or one, or that, you know, the legal issue is whether WFE is a nominal employee, right? So based on all of the documents that are there, why as a matter of law doesn't that make a nominal employee? I don't think we can go that far, Your Honor, because these, the series of admissions that I'm talking about cut both ways. And yes, it is undisputed that there are documents in that series that would lead to a conclusion that he was a Western Fruit Express employee, but there are also documents in that series cutting the other way where BNSF, with full knowledge of what it was doing, referred to him as a BNSF employee. And for summary judgment purposes, we. But even giving full credit to all the documents that you're claiming that have BNSF on it, why is it still as a matter of law with all of them there, at least the nominal employee are met? The reason, the reason that if you give full credit to all of the documents, that it doesn't lead to a conclusion as a matter of law that he was at least nominal. Why not? Well, number one. What's the definition of a nominal employer? In my view, Your Honor. What the case would, in the law's view, what's the, there is no definition? There's no definition that either side is briefed. I would assume that it would have its usual and ordinary meaning, and in my view, that would mean in name. It might be what now? In name, Your Honor. Would you have triable issues of fact if you get to Kelly on the dual employer theory and one of the other, the subservient theory? I mean, aren't there triable issues of fact on those issues, even if the court disagrees with you that there's not sufficient evidence of his nominal employment for Western Fruit? I think that's right, Your Honor. And the reason I keep saying that we win on the Kelly analysis as well is that if you look at the duties that the cases say the railroad owes under the FALA, and we cited those in our briefing, they owe a duty to provide a safe place to work. They owe a duty to provide and promulgate appropriate safety rules to ensure that the workplace is safe. They owe a duty not to assign their personnel to work that is beyond their physical capabilities. So if you look at those duties and then you look at what they were doing in that shop, they controlled the safety training. They provided the rules. They required everybody who worked in that shop to follow the railroad's rules, not Western Fruit Express's rules, the railroad's rules. And then they sent Mr. Schmidt out to have this medical evaluation to verify whether or not he could actually do the work, whether it was in his physical capabilities. And the reason they did that is because they had a legal duty under the FALA to do that. You spent most of your time, though, trying to convince us that we shouldn't even reach Kelly. If we reach Kelly, which theory under Kelly? There's three theories as I read Kelly under which he might be considered, Mr. Schmidt might be considered an employee of the railroad. The first is a borrowed servant. I don't think you're contending that, right? Nope. But the second theory is he could be deemed to be acting for two masters simultaneously. Is that the theory that you're proceeding under if we get to Kelly? That's a theory that's available, Your Honor, but it has not been worked up in this case. It's never been argued on that theory. The third theory is that he could be, the company could be a subservient. Western Fruit could be a subservient of the railroad. Is that the theory that you're relying on? That's the theory we're pursuing. So it's the third theory of Kelly that you're pursuing? Yes, Your Honor. All right, Kelsey, you have a minute and 50 seconds. Do you want to reserve it? I would, Your Honor. Thank you very much. May it please the Court, Your Honors. My name is Jacqueline Hughes. I'm here from Hedger Friend Law in Billings, Montana, representing BNSF Railway Company in this matter. The crux of this issue involves, obviously, a relationship between Western Fruit Express and BNSF, Western Fruit Express, WFE, being the wholly owned subsidiary. WFE is a refrigerator car repair company. The importance of that is that it provides refrigerator cars, trailers, maintenance and servicing. It does so to BNSF and other railroad lines. For 100 years, FILA has not been applicable to refrigerator car companies. For 30 years, the United States Supreme Court has held that traditional agency standards don't apply and theories of alter ego or piercing the corporate veil don't apply in establishing an employment relationship for purposes of In this case, the appellant is trying to sidestep 100 years of law applicable to refrigerator car companies and 30 years of very settled law applicable to the doctrine of how much control is required to establish an employment relationship and asking this Court to sidestep those by simply denying that he was a nominal employer and instead applying traditional agency standards to make a determination whether he was, in fact, a nominal employee. While the appellant summarily denies that he was a nominal employee. Well, why isn't that a tribal issue like he's saying? Because there are BNSF documents, there are WFE documents. Why isn't then that just a tribal issue? Well, going to Kelly and I realize it's a That's not You don't get to Kelly until you get past the first one, right? Except that in Kelly, the allegations were the same. In Kelly, the appellant or the petitioner, Kelly argued that he was directly an employee of Southern Pacific Company. He made the same argument. The Court found nonetheless that he was a nominal employee. The facts are the same. And so while we don't have any case law that says Case on summary judgment. Kelly was a case that was granted on summary judgment. Actually granted for Kelly on summary judgment, reversed by the Ninth Circuit on The District Court was reversed and then it was the Supreme Court then delineated the Kelly standard at that point. So at this point, the appellant has cited no case law which defines what a nominal employee is. Or no case law that says here's how you get around this sort of traditional agency standard or If nobody articulated a definition of how can summary judgment be granted without somebody articulating what defines a nominal employee and whether or not there's a question of fact regarding it. That seems really strange to me. Well, at the District Court level, what the only definition available or the only, I suppose, two authorities that we were going from was the traditional definition of nominal, which means to exist in name or at least to exist in name, as well as the Kelly Court's finding that despite Kelly's allegation that he was directly an employee, Kelly never conceded that he was a nominal employee. He never conceded that he was a technical employee of PMT Trucking. He argued that he was directly an employee of Southern Pacific. It was the court's finding on nearly identical facts to this case that he was a nominal employee of PMT Trucking under those facts. The facts are similar in this case. Mr. Schmidt was hired by WFE. He was hired by WFE before BNSF as a corporate entity even existed. Well, isn't that at issue? I found in the record an allegation by the plaintiff that he had applied to Burlington Northern in 1975 to work for Burlington Northern. That was his initial application. He had applied to Burlington Northern at the time that he was hired. There is documentation filled out. He filled out the Burlington Northern, the BNSF application. When he agreed to employment, there was a document, and I can find that for you in the document, where the document indicates which entity he would be working for. He indicated there's a checkmark for BNSF, and there's also a checkmark for Burlington Northern, excuse me, at the time, a checkmark for Western Fruit Express. Mr. Schmidt checked that he would be working for Western Fruit Express and signed that document consenting to employment at Western Fruit Express. There's more, though, in this case. I found in the record correspondence from BNSF addressing Mr. Schmidt as its employee. You can see that, right? That's correct. The workplace rules at Western Fruit were all set by BNSF. In other words, what equipment he had to wear, safety standards, and the like, right? Not quite. It's not disputed that Western Fruit Express did use BNSF safety rules. It's not disputed that BNSF required hard hat, steel-toe boots, that kind of thing, on the property. That's not any different from any other independent contractor on BNSF's property. Well, this fellow worked at a place that had the BNSF logo over his very workplace, right? As well as the Western Fruit Express logo. His hat said BNSF on it? His hat did say BNSF on it. He got paychecks that were generated through BNSF payroll? That's correct. And as counsel said when he was denied the opportunity to come back to work, it was a BNSF physician who made that determination and said he's not fit to work, right? That's correct as well. I don't understand why those facts don't create a triable issue on whether he's working for one company or the other or both. There's a couple problems. One, those factors don't go to whether he's a nominal employee. Those factors... But let's go on to the second phase. Is he a dual employee or is Western Fruit a subservient of BNSF? I mean, it seems to me that it's rife with triable issues. I'm not saying necessarily the outcome is certain, but doesn't he get to a jury on that and say, look, all of this suggests that I was really working for BNSF. Shouldn't he get to a jury on that? No. And here's why. As an initial matter, the dual employment was never addressed at the lower court level. That was never something that was addressed in the pleadings, in the motions for summary judgment. Appellant Schmidt has never proceeded on a dual employment theory. It's never been developed. It can't now be developed as a way to defeat the summary judgment when the only issue before the district court is whether he was a... Whether WFE or whether Mr. Schmidt was a subservient... Was he? Excuse me. The only issue there was, one, if Mr. Schmidt was a nominal employee, and two, because BNSF believes that he was a nominal employee and the law supports that, whether Mr. Schmidt was a servant of a company that is a servant of the railroad. And so because that was the only theory that was advanced at the lower court level, that's the theory that the facts have to be applied to. Those are two different things. The second thing you stated is one of the three viable theories under Kelly. So Kelly was at issue in front of the district judge, right? Yes, Your Honor, Kelly was. So my question then goes back to the facts that I was rattling off to you that I found in the record of this case. I don't... At least the alleged facts. And the district judge is required to look at this in the light most favorable to the non-moving party and determine whether a rational trier of fact could conclude Mr. Schmidt's way. And it seems to me that all of those things, and there are more, but all of those things are rife for a decision by a rational trier of fact. They're not because they don't go to control. The issue in Kelly, or what the court delineated in Kelly, is not if there was involvement or overlap. It's whether BNSF controlled the day-to-day operations and whether BNSF controlled the actual activity that Mr. Schmidt is alleging caused him injury. What is the evidence in the record as to control? And not just the evidence you want to talk about. What is the evidence, and give me all the evidence, which would be that the plaintiff or the appellant would allege? Because we have to give all inferences. So what is the evidence regarding control? One of plaintiff's main, or appellant's main pieces of evidence, or key pieces, as he has called them, is a website wherein BNSF says that it's responsible for the day-to-day operations of a wholly-owned subsidiary. That would be evidence for the appellant, except that Kelly says that being responsible, and it specifically uses the word responsible, is not sufficient to establish the control standard required by Kelly. That's one piece of evidence. Appellant has said that use of safety, use of BNSF safety procedures, safety videos, those kinds of things, establishes BNSF's control. I don't believe that that actually establishes control. WFE is a small, small corporation, and they do use BNSF safety policies. There's no evidence in the record that BNSF requires that. And whether it's voluntary or whether it's required is something that has to be addressed in order to meet the standard of control required here. Could a jury infer control from the evidence that it was a BNF doctor who said you can work or you can't work? No. That happened in 2004. There has to be control over the day-to-day operations that occurred, that were going on, that contributed to, that he alleges contributed to the injury. So even if BNSF said he couldn't come back to work, that doesn't establish that BNSF was exercising control over the specific conduct that the appellant is alleging caused his injury. So the period that the appellant alleges the injury to occur is what period? 1975 to 1999. All right. Is there any evidence in the record of any BNSF supervisors on his day-to-day operations or? No. Counsel, a difficulty I have with the district court decision is it primarily was based on the report and recommendation from the magistrate judge. Would you agree with that? I would agree that he adopted the magistrate judge's findings. I would disagree that that was the only basis for it. I think he reviewed. I believe that he reviewed the facts and the submissions independently. They were briefed independently of the brief submitted to the magistrate judge. Well, the difficulty I'm having with both in the report and recommendation and the district court decision is where they respectively looked at the evidence to determine whether or not there is a material issue of fact. And I don't see where any information that was favorable to the nominal employee or unfavorable to that determination was included. The standard for nominal is so low. It's in name only. Right. So being in name only, there's, you know, appellant argues that there's a substantial amount of evidence as to who is the actual employer, who is controlling day-to-day, all those things. Nominal being in name only, maybe there were letters from DNSS. I understand what you're saying, but the difficulty I'm having is when the discussions were made by the district court judge and the magistrate judge that only talked about the information that would support a finding that he was a nominal employee and didn't discuss information that would tend against that finding. Do you think that's a problem? I don't think it's a problem because I don't think... I think the evidence presented is evidence that would, in theory, go to the issue of control or the issue of a dual servant relationship, those standards under Kelly. I don't think that detracts from the nominal employee because it's not necessary, given the definition of a nominal employee or Kelly's determination that, the Kelly court's determination that Kelly was a nominal employee to get there. There's evidence that Mr. Schmidt was at least in name an employee of Western Fruit Express. That's all that's needed to get past that hurdle and move on to the Kelly standard. If the court recognizes Woolery, the Burlington Northern, as persuasive authority, would that be helpful to you? Yes. How so? The facts in this case are nearly identical to Woolery. In fact, Woolery was decided in 1999. His injuries are... Injury, I believe, was in 1997, although I'm not 100% certain on that. Um, that case was decided actually contemporaneously with the time period that Mr. Schmidt is alleging his cumulative trauma type injuries occurred. Didn't Woolery stipulate to being a nominal employee, so that took that off the table? Actually, Woolery argued kind of a piercing the corporate bail standard rather than the nominal employee or the Kelly standard. The Woolery court found that he was a nominal employee and then moved on to the Kelly standard. But he didn't challenge that at all. I believe that's correct, that he did not challenge the status as a nominal employee. And... You have six seconds. Judge, Magistrate Judge Lynch looked over it and analyzed it. He found that there wasn't any evidence of control Judge Malloy analyzed the same set of factors, found that there wasn't evidence of control. Appellant has the burden to show control. It is not BNSF's burden to show that there wasn't control. It is appellant's burden to show that there was control. All right, thank you, counsel. Rebuttal. Thank you, Your Honor. Two critical points, I think, about the Kelly case. Number one, I think counsel misspoke. The plaintiff in that case conceded that he was a nominal employee of the Holy On subsidiary. That was not... He conceded that. You can find that on page 319 of the Kelly opinion. Although Petitioner alleged that he was technically in the employee of a trucking company rather than the railroad, he contended his work was sufficiently under the control of the railroad to bring him within the coverage of the FDLA. That's the first point on Kelly. Second point is that Kelly was not a summary judgment. Kelly was an appeal from a case tried to the district court sitting as a bench trial on... That's why I asked that question because I thought it was a different procedural posture. They basically put everything else on hold and tried the question of employment to the district court judge as a bench trial. So they had findings and they had credibility determinations. If a nominal employee is an employee in name only, if that's what it means, the fact that there are documents in there that your client has signed that have WFE on that, why isn't that just enough? Why aren't the material facts, all the other things that you're talking about, why doesn't that go as the appellee is indicated to the Kelly control issue, not to the nominal issue? Judge, it's a triable issue because I don't think that a properly instructed jury would necessarily be compelled to find on the basis of a few documents that indicate him in name as being a Western Fruit employee, Western Fruit Express employee, that that's the end of it. But that's what it means. I mean, if you accept the definition that it's in name only, his name connected as being an employee of Western Fruit settles the matter, doesn't it? I don't think it does, Your Honor. Why not? Because of all of these other documents that indicate that in name, he's a BNSF employee. Can you be an employee in name of two companies? I don't think you can. I think this is a jury question, and it's vigorously disputed, and I think it's for the jury to sort out. Part of my difficulty is, I mean, the law on this hasn't been fleshed out, and it makes it, for me personally, difficult to determine what we're looking at in terms of the standard. What do the litigants have to show in order to survive summary judgment or to prevail on the case? I just felt like perhaps it wasn't developed sufficiently in terms of what the standard is. Not your fault, not anybody's fault. It's just an observation. I can't argue with that, Your Honor. I wish we had more to go on here. Okay. All right. Thank you. Thank you to both counsel for your arguments in this interesting and challenging case. The next case on calendar for argument is
judges: Burns, Rawlinson, Callahan